UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| HARRISON POULTRY, INC. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CINCINNATI INSURANCE ) <br> COMPANY ) <br> ) <br> ) <br> ) <br> Defendant. | CIVIL ACTION NO. _____ <br><br><br> **JURY DEMANDED** |

## COMPLAINT

Plaintiff Harrison Poultry, Inc. ("Harrison Poultry"), by and through its undersigned counsel, hereby files this Complaint against Defendant The Cincinnati Insurance Company ("CIC"), and would show the Court as follows:

### I.   NATURE OF THE CASE

1.   This is an insurance coverage dispute between Harrison Poultry (the policyholder) and CIC (the insurance company) under Policy No. EMP 0470600 (the "Policy") and the attached CINCINNATI CYBER DEFENSE Coverage Part Form No. ML104 01/20 and GEORGIA CHANGES – CINCINNATI CYBER DEFENSE Coverage Part Form No. HC 4135 GA 01 20 (the "Cyber Defense Coverage Part").

1

Harrison Poultry is a named defendant in several putative class actions that allege damages from a data breach in late 2024. Harrison Poultry seeks coverage for four suits (collectively, the "Data Breach Class Actions"): 1) *Kelsy Darby v. Harrison Poultry, Inc.*, Cause No. 25-CV-000614-P, Superior Court of Barrow County, Georgia, 2) *Regero Allen v. Harrison Poultry, Inc.*, Cause No. 25-CV-000622-P, Superior Court of Barrow County, Georgia, 3) *Natinya Bugg and Lynne Zapata v. Harrison Poultry, Inc.*, Cause No. 25-SV-000128, State Court of Barrow County, Georgia, and 4) *Karice Atkinson v. Harrison Poultry, Inc.*, Cause No. 2:25-cv-00119-RWS, U.S. District Court for the Northern District of Georgia, Gainesville Division.

2.  Harrison Poultry brings this action because CIC wrongfully denied coverage to Harrison Poultry for the Data Breach Class Actions by claiming Harrison Poultry provided inadequate notice of potential lawsuits arising from the data breach. Harrison Poultry brings this action to recover all damages arising from CIC's denial of coverage.

## II.   PARTIES

3.  Harrison Poultry is a corporation organized under the laws of the State of Georgia with its principal place of business in Georgia.

4.  CIC is an Ohio-registered corporation with its principal place of business in Cincinnati, Ohio.

## III.   JURISDICTION & VENUE

5.   The foregoing paragraphs are incorporated herein by reference.

6.   Jurisdiction is proper in this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000, excluding interest and costs, and there is complete diversity of citizenship between Harrison Poultry and CIC.

7.   An actual controversy exists between Harrison Poultry and CIC within the meaning of 28 U.S.C. § 2201, which is of sufficient immediacy and reality to warrant declaratory relief.

8.   Venue is proper under 28 U.S.C. § 1391(b)(1) because CIC issued the Policy to Plaintiff within Georgia and regularly conducts business within the State of Georgia.  Venue is also proper under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV.   FACTUAL ALLEGATIONS

**A.   The Policy**

9.   CIC sold Harrison Poultry the Policy, No. EMP 0470600, which includes the attached Cyber Defense Coverage Part form.  The **policy period**[1] for

---

[1] Defined terms in the Policy are bolded in this Complaint, as they are in the Policy.

the Cyber Defense Coverage Part is January 1, 2024, to January 1, 2025. The Cyber Defense Coverage Part has, for the sections relevant here, a $3,000,000 policy limit and a $10,000 deductible.

10. Harrison Poultry purchased the Policy from CIC to protect itself from, among other things, first-party loss and third-party liability arising from cyber attacks.

11. A true and correct copy of the Policy is attached hereto as Exhibit A. Plaintiff incorporates the Policy by reference into this Complaint.

12. The "Retroactive Date" is September 15, 2020.

13. The Cyber Defense Coverage Part of the Policy provides multiple coverages for cyber attacks under a common deductible and policy limit.

14. Central to the Policy's coverage is the term "**personal data compromise**", which is generally defined (subject to various conditions not relevant here) as "the loss, theft, accidental release or accidental publication of **personally identifying information** or **personally sensitive information** as respects one or more **affected individuals**."

15. The Response Expenses section of the Policy provides first-party loss coverage to Harrison Poultry for loss incurred responding to a **personal data compromise**, including hiring contractors to investigate the breach and provide notice to **affected individuals**.

4

16. The Data Compromise Liability section covers liability and defense costs for third-party "**claims**" made during the **policy year** alleging a "**wrongful act**", which is defined to include a **personal data compromise**.

17. Thus, the Policy provides coverage for a **personal data compromise** in at least two regards relevant to this action. The Response Expenses coverage provides first-party loss coverage for expenses incurred directly as a result of the **personal data compromise**, while the Data Compromise Liability coverage provides defense and indemnification against third-party **claims** alleging a **personal data compromise** (i.e., a **wrongful act**).

18. While the Data Compromise Liability applies to **claims** that are made during the **policy year**, there are two provisions in the Policy (jointly, the "Notice of Potential Claim Conditions") that ensure that when a **personal data compromise** occurs and CIC is promptly notified during the **policy period**, third-party **claims** made later arising from that **personal data compromise** will be covered, even if they are made after the **policy period** ends.

19. The first provision, Section VII – Conditions, paragraph 4(a), reads as follows:

> If, during the **policy year**, you first become aware of any circumstance that could reasonably be expected to give rise to a **claim** or a **regulatory proceeding** you may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the

> date the circumstance is first discovered by you, and must be made during the **policy year** and must include:
>
> (1) The specific details, including the date of the circumstance;
> (2) The alleged injuries or damage sustained or which may be sustained;
> (3) The names of potential claimants;
> (4) The manner in which you first became aware of the circumstance.
>
> Any subsequent **claim** or **regulatory proceeding** arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

20. The second provision, Section VI – Notice of a Wrongful Act in the General Provisions Applicable to All Liability Coverage Parts (Form 101 01 20), reads:

> If prior to the end of the **policy period** of the applicable Coverage Part, any of the **insureds** first become aware of a specific **wrongful act** they believe is likely to give rise to a **claim**, and if any of the **insureds** give us written notice as soon as practicable, but prior to the end of the **policy period** or the applicable Coverage Part, of:
>
> A. The specific **wrongful act**;
> B. The injury or damage which has or may result therefrom; and
> C. The circumstances by which the **insureds** became aware thereof
>
> then any **claim** subsequently made arising out of such **wrongful act** shall be deemed to have been made when notice of the **wrongful act** was first given.

21. In other words, the Policy provides coverage where Harrison Poultry gives CIC notice within the **policy period** of a "circumstance that could reasonably be expected to give rise to a **claim**" and/or "a specific **wrongful act**…likely to give rise to a **claim**." Any **claim** later made arising out of those circumstances/**wrongful acts** reported is considered made within the **policy period**.

**B.     Harrison Poultry Discovers the Ransomware and Seeks Coverage**

22. On or about December 17, 2024, Harrison Poultry discovered ransomware on its computer system (the "2024 Personal Data Compromise").

23. The ransomware included a message that informed Harrison Poultry the hacker had obtained personal information about Harrison Poultry's employees, described Harrison Poultry's possible legal liability under Georgia law, and told Harrison Poultry that it faced potential "fines and lawsuits."

24. Harrison Poultry immediately notified CIC of the 2024 Personal Data Compromise on December 17, 2024. Harrison Poultry's notification included the ransomware message regarding Harrison Poultry's potential legal liability and lawsuits.

25. Under the plain language of the Policy, Harrison Poultry's notice of the 2024 Personal Data Compromise constituted both notice of a **personal data compromise** under the Response Expenses coverage and also notice of a **wrongful**

**act**/circumstance that could give rise to a **claim** under the Notice of Potential Claim Conditions.

26. CIC promptly acknowledged receipt and opened a claim for the 2024 Personal Data Compromise.

27. CIC covered the 2024 Personal Data Compromise in full under the Policy's Response Expenses and the Cyber Extortion coverages.

28. Over the weeks and months that followed, Harrison Poultry worked under the consent, direction, and oversight of CIC to identify and notify **affected individuals**.

29. Harrison Poultry retained, with CIC's consent and approval, several CIC-designated service providers, including Cypfer, Inc., ("Cypfer"), Kroll Information Assurance, LLC and Trustpoint, to help identify and notify **affected individuals**.

30. The statements of work for these vendors' respective engagements, which CIC reviewed and approved, indicated that the vendors were to provide services in connection with the 2024 Personal Data Compromise "in anticipation of litigation."

31. On April 16, 2025, Harrison Poultry, with CIC's consent and oversight, notified **affected individuals** about the 2024 Personal Data Compromise.

32. As a direct result of the notices that Harrison Poultry sent, with CIC's assistance and oversight, to the **affected individuals**, Harrison Poultry received service of the first of the Data Breach Class Actions on or about Friday April 25, 2025, and notified CIC of the lawsuits on or about Monday April 28, 2025.

33. Pursuant to an agreement between CIC and The Hartford Steam Boiler Inspection and Insurance Company ("HSB"), CIC assigned HSB the claims handling responsibilities for Harrison Poultry's claim.

**C.    CIC Denies Coverage**

34. On May 9, 2025, CIC sent Harrison Poultry a letter denying coverage for the Data Breach Class Actions. In its letter, CIC explained that the Data Breach Class Actions are "**claim**[s] which arise[] from a **personal data compromise** that took place after the Retroactive Date (September 15, 2020) and before the end of the **policy period** (January 1, 2025)" and that the lawsuits were "reported within 60 days after the date [they were] first received by Harrison."

35. CIC's May 9, 2025, letter thus admits the Data Breach Class Actions meet almost all the criteria for coverage under the Data Compromise Liability section of the Policy.

36. But CIC denied coverage because "the **claim** was not first received during the **policy year** or any applicable **extended reporting period**", insofar as the

9

**policy year** ended January 1, 2025, and the first of the Data Breach Class Actions was filed on April 25, 2025.

37. CIC's May 9, 2025, letter did not address the Notice of Potential Claim Conditions or explain why Harrison Poultry's December 17, 2024, notice of the 2024 Personal Data Compromise did not satisfy one or both or those conditions.

38. In a subsequent phone call on May 13, 2025, HSB employee Carrie Strakose explained that CIC denied coverage because Harrison Poultry's December 17, 2024, notice of the 2024 Personal Data Compromise did not qualify as notice under the Notice of Potential Claim Conditions. According to Ms. Strakose, Harrison Poultry should have given two notices, one under the Data Compromise Liability section of the Policy and one under the Response Expenses section.

39. On May 20, 2025, Harrison Poultry, through its counsel, sent CIC a letter urging CIC to reverse its denial of coverage for the Data Breach Class Actions based on the applicability of the Notice of Potential Claim Conditions, which Harrison Poultry satisfied.

40. CIC responded to Harrison Poultry's May 20, 2025, letter on June 11, 2025, reiterating the earlier coverage denial without providing any further explanation.

41. The Policy requires that any dispute between CIC and Harison Poultry be "submitted to non-binding mediation prior to commencement of an action

10

between the parties." Harrison Poultry satisfied this mediation provision. Harrison Poultry invoked the mediation provision on June 16, 2025. The Parties participated in an unsuccessful mediation on July 31, 2025.

## V. REQUEST FOR DECLARATORY JUDGMENT

42. The foregoing paragraphs are incorporated herein by reference.

43. An actual and justiciable controversy exists under 28 U.S.C. § 2201 between Harrison Poultry and CIC as to whether CIC wrongfully denied Harrison Poultry coverage for the Data Breach Class Actions under the Policy.

44. Harrison Poultry seeks a judicial declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C., § 2201(a), *et seq.*, of the respective rights and duties of the parties under the Policy, and specifically, that CIC wrongfully denied Harrison Poultry coverage for the Data Breach Class Actions. Harrison Poultry has no adequate remedy at law, and a judicial declaration is necessary and appropriate at this time.

## VI. BREACH OF CONTRACT

45. The foregoing paragraphs 1-41 are incorporated herein by reference.

46. The Policy is a valid and enforceable contract.

47. Harrison Poultry is an **insured** under the Policy.

48. Harrison Poultry has satisfied all conditions under the Policy. Alternatively, CIC has waived and/or is estopped from asserting any unsatisfied conditions under the Policy.

49. Harrison Poultry has performed its duties under the Policy.

50. Harrison Poultry gave timely notice to CIC about the 2024 Personal Data Compromise on December 17, 2024. That notice satisfied the Notice of Potential Claim Conditions, such that **claims** later made against Harrison Poultry arising from the 2024 Personal Data Compromise (including, specifically, the Data Breach Class Actions) are deemed made as of December 17, 2024.

51. The Data Breach Class Actions are **claims** covered under the Policy.

52. Harrison Poultry's timely notice of covered **claims** entitles it to coverage for the Data Breach Class Actions.

53. CIC breached the contract by denying coverage to Harrison Poultry.

54. Harrison Poultry suffered damages, including but not limited to monetary damages in the form of loss arising from the Data Breach Class Actions, prejudice to its ability to resolve the Data Breach Class Actions, and attorney's fees and costs to enforce its rights under the Policy.

### VII.  BAD FAITH REFUSAL TO PAY A CLAIM

55. The foregoing paragraphs 1-41 are reincorporated by reference.

56. The Policy covers Harrison Poultry's defense and indemnification against the Data Breach Class Actions under the Policy's Data Compromise Liability coverage.

57. CIC refused to pay for Harrison Poultry's losses within 60 days after Harrison Poultry's demand and continues to refuse to pay for Harrison Poultry's losses. Despite Harrison Poultry's demands for payment of covered losses, CIC has not paid any of Harrison Poultry's losses related to the Data Breach Class Actions.

58. CIC's refusal to pay is in bad faith and in violation of O.C.G.A. § 33-4-6. CIC's coverage position is frivolous and unfounded in law and fact given the undisputable facts showing Harrison Poultry put CIC on notice of circumstances/**wrongful acts** that could result in a **claim** on December 17, 2024. CIC's coverage position also ignores important policy provisions and reads nonexistent conditions to coverage into the Policy that are not based on the policy language.

59. CIC admits the Data Breach Class Actions are "**claim**[s] which arise[] from a **personal data compromise** that took place after the Retroactive Date (September 15, 2020) and before the end of the **policy period** (January 1, 2025)" and that the lawsuits were "reported within 60 days after the date [they were] first received by Harrison."

60. CIC's position that the "the **claim** was not first received during the **policy year** or any applicable **extended reporting period**" ignores the Notice of Potential Claim Conditions, both of which Harrison Poultry satisfied.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Harrison Poultry prays for a judgment as follows:

60. A judicial declaration that the Policy provides Harrison Poultry coverage for the Data Breach Class Actions;

61. Judgment awarding Harrison Poultry all damages it sustained or will sustain due to CIC's breach of the Policy;

62. Judgment pursuant to O.C.G.A. § 33-4-6 awarding Harrison Poultry, in addition to its losses, 50 percent of CIC's liability or $5,000, whichever is greater, and all reasonable attorney's fees for the prosecution of this action against CIC;

63. All costs and expenses arising from the filing and prosecution of this suit;

64. Such other relief as the Court deems just and proper.

Respectfully submitted this 4th day of August, 2025.

/s/ Andrew M. Beal
Andrew M. Beal
Georgia Bar No. 034842
Beal, Sutherland, Berlin & Brown
2200 Century Parkway, Suite 100
Atlanta, GA 30324
(404) 688-2700
drew@beal.law

David Bender
Texas Bar No. 24118197
California Bar No. 123976
*(pro hac vice application pending)*
Haynes Boone
6000 Headquarters Dr., Suite 200
Plano, TX 75024
(972) 739-8785
david.bender@haynesboone.com

Joseph Balice
California Bar No. 245509
*(pro hac vice application pending)*
Caroline Ford
California Bar No. 230526
*(pro hac vice application pending)*
Haynes and Boone, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
(949) 202-3095
joseph.balice@haynesboone.com
caroline.ford@haynesboone.com

*Attorneys for Plaintiff*
*Harrison Poultry, Inc.*